[Decided January 19, 1887.]

## OREGON RAILWAY AND NAVIGATION COMPANY *v.* THORNTON W. OWSLEY.

1. RAILROAD COMPANIES — EVIDENCE — EMINENT DOMAIN. — On appeal to the District Court from an award made under proceedings for the condemnation of land by a railroad company, under chapter 188 of the Code, in which the land-owner appealing is the plaintiff, where it is shown that at the time of the institution of the proceedings the construction of the road over plaintiff's land was not completed, testimony of defendant's engineer, that, according to the plans for construction, certain irrigating ditches, for the prospective destruction of which plaintiff claimed damages, were to be placed by the company in the same condition as before construction, and maintained in the condition afterwards by defendant at its own expense, and also as to the expense of replacing the ditches as they were before the commencement of construction, that he was instructed to replace them in the same condition, is admissible as proper evidence on the question of damage.

2. INSTRUCTIONS — JURY — AMOUNT OF EVIDENCE — BURDEN OF PROOF. — It is error to instruct a jury that in order to render an affirmative defense available to the defendant, the latter "must prove the same by a preponderance of evidence, *and to your satisfaction*," etc. From such an instruction the jury would naturally understand that the burden was on the defendant to prove his defense to a greater degree of certainty than that afforded by a mere preponderance of the evidence.

3. ESTOPPEL EN PAIS — EMINENT DOMAIN — DAMAGE.— If a defendant in condemnation proceedings under the statute, and in attempting the exercise of the right of eminent domain, has surveyed and located a railroad over and across the land of the plaintiff, as described in his complaint, at a different place from that where it is now located and constructed, and intended to construct the same at said place, and that plaintiff thereupon offered to give a right of way and to make no claim for damages if defendant would construct its railroad at the place where the same is now located and constructed, and that defendant, relying upon such promise, and induced thereby, changed said location, and constructed its railroad as it is now constructed, over and across the lands of plaintiff, at considerable extra expense over and above what it would cost to construct said railroad at the place where the same was originally located, then the plaintiff cannot recover damages in this action for the right of way described in plaintiff's complaint.

ERROR to the District Court holding terms at Pomeroy. First District.

In addition to the material facts appearing in the opinion of the court, there were certain instructions given to the jury, and others refused, by the District Court, and the defendant excepted to the rulings of the court on said instructions.    These were as follows: —

1. The court of its own motion gave to the jury the following instructions, to the giving of each of which defendant excepted: —

"The attitude of this case is this, that the plaintiff can recover nothing, or else he can recover full compensation; these two things must be considered separately, and not annexed together.

" If the jury give any damage, they must give the entire damage.    The damage is the amount which the said road, by taking the one-hundred-foot strip, has reduced the market price of the whole farm of 320 acres, and from this sum the jury ought not to deduct anything for such general benefit as the building of the road may do to other farms in the vicinity; such general benefit to all, or any part thereof, should not be deducted from the plaintiff's damages.

" The plaintiff would have a right to put a box under

the railroad to conduct water under the railroad if he can do so without endangering the bed of the road, but in doing so he must not disturb the said road-bed, nor endanger it, and even if he did not disturb or endanger the road-bed, yet the railroad company, in repairing the road or improving it, might tear up such box or fill up the ditch, if it was convenient or necessary for them so to do. Whether this precarious right is of any value, or if it be, how much, is to be considered by the jury, if there is any evidence on the subject; if there is no evidence on the subject, the jury will not consider the subject at all."

2. Also, at the request of the plaintiff, the court gave to the jury the following instructions, to the giving of each of which the defendant excepted:—

"The defendant, among other things in its answer, has set up and pleaded what is called an equitable estoppel, and to make such defense available, the defendant must prove, by a preponderance of evidence, and to your satisfaction, that plaintiff made in substance the representations and promises alleged in defendant's answer, and that the defendant was induced to and did rely on said representations and promise of plaintiff, and changed the route of said road through said premises by reason of said representations and promise; and must further prove by a preponderance of evidence, and to your satisfaction, that the change of said route from the place first contemplated to where the road is at present located, would not have been made by defendant if plaintiff had not made such representations and promise; and further, that the making of said road upon the line where the same is constructed is substantially more expensive to defendant than the making and constructing said road on said old line would have been, or work other injury to defendant.

"The court instructs you, that if, at the time the defendant claims that plaintiff promised to give it the

right of way for said railroad on the line where the same is constructed, the plaintiff was a married man, and that said premises were acquired by plaintiff during said marriage, and that the same were not acquired by gift, devise, or descent, and that the said wife of plaintiff was not a party to and did not join plaintiff in said promise of right of way, then the same was void, and the defendant can claim no rights or privileges by reason thereof."

3. And the court refused to give the following instructions asked by defendant:—

"If the jury believe from the evidence that defendant had surveyed and located a road over and across the land described in plaintiff's complaint at a different place from that where it is now located and constructed, and intended to construct the same at said place, and that said plaintiff offered to give a right of way and to make no claim for damages if defendant would construct its railroad at the place where the same is now constructed, and that defendant, relying upon said promise, and induced thereby, changed said location, and constructed its railroad as it is now constructed, over and across the land of plaintiff, at considerable extra expense over and above what it would have cost to construct said railroad at the place where the same was originally located, then said plaintiff cannot recover damages in this action for the land taken for the right of way in plaintiff's complaint described.

"If the jury believe from the evidence that the railroad is not yet fully completed over and across the land of plaintiff, but that by the plan of said road irrigating ditches crossed by said railroad belonging to parties over which said road is to be constructed are to be put in the same condition that they were before the construction of said railroad, they should allow no damages by reason of said ditches, because it is presumed that said company will construct its road in accordance with said plan."

*Messrs. Allen & Crowley, Mr. Rufus Mallory,* and *Mr. Mack F. Gose,* for Plaintiff in Error.

The first instruction given by the court of its own motion is misleading. It does no submit to the jury the question of the special advantages which the evidence may show inured to the premises by reason of the construction of the road. It directs the attention of the jury from a material element in estimating damages, by directing their inquiries to a matter foreign to the case. (Code, sec. 2473; *San Francisco etc. R. R. Co. v. Caldwell,* 31 Cal. 367; *Oregon Central R. R. Co. v. Wait,* 3 Or. 428.)

The court instructed the jury, in substance, that plaintiff would have a right to replace his ditches subject to the right, on part of defendant, to tear them up, if necessary or convenient, in order to operate its road, and yet refused to allow defendant to show, by a witness, what it would cost to replace the ditches. If plaintiff claimed damages, and the evidence shows he did, by reason of the destruction of ditches, defendant ought to be allowed, certainly, to show the cost of replacing them, and also to show that by the plan of its road, provision was made by defendant for the replacement of all ditches destroyed. (*Kansas City & E. R. Co. v. Kregelo,* 5 Pac. Rep. 15; Mills on Eminent Domain, sec. 213; *March v. Portsmouth R. R.,* 19 N. H. 372.)

The first instruction given at the request of plaintiff does not correctly state the law in relation to the quantity of evidence required in behalf of the party having the burden of proof. A mere preponderance, however slight, is sufficient. The instruction given virtually calls for proof beyond a reasonable doubt. (1 Greenl. Ev., 6th ed., sec. 2; 3 Greenl. Ev., 6th ed., 29; *Haskins v. Haskins,* 9 Gray, 390; *Miller v. Balthasser,* 78 Ill. 302; *Silver Mining Co. v. Fall,* 6 Nev. 459; *Crabtree v. Reed,* 50 Ill. 206; *Howe v. Koch,* 84 Ill. 408.)

The second instruction given to the jury, at the request of plaintiff, in effect withdraws the question of estoppel from their consideration, as there was no evidence offered tending to show that the wife of plaintiff joined in his promises to defendant. The title to the one-hundred-foot strip of land did not inure to defendant by virtue of the estoppel, but by operation of law, under proceedings for condemnation. Defendant, exercising the right of eminent domain, could by proper proceedings condemn the land and have the title transferred by decree of court, upon the payment of damages. Plaintiff had a right to damages, unless by his conduct he estopped himself from making any claim therefor. The amount awarded him, if any, would be personal property, and conceding it to be community property, he would have the absolute right to dispose of the same in any way. Estoppel is only one method of disposition. The question of title, or the acquisition of title, is not an issue in this case. It is simply the right to compensation for property condemned. Title passes, not by grant or estoppel, but by the judgment of the court on the determination of this issue of compensation. (Code, secs. 2409, 2475, 2477; *Dickerson* v. *Colgrove,* 100 U. S. 578; *Kirk* v. *Hamilton,* 102 U. S. 68.)

*Messrs. Anders, Brents, & Clark,* for Defendant in Error.

The first instruction given by the court of its own motion, as to the measure of damages in this case, is correct, and necessarily includes any special advantages which may have been shown by the evidence, inured to the premises of plaintiff, by reason of the construction of defendant's railroad. (Mills on Eminent Domain, sec. 159; Redfield on Railways, sec. 91; Pierce on American Railroad Law, sec. 203; *San Francisco etc. R. R. Co.* v. *Caldwell,* 31 Cal. 367, 376; *In the Matter of Furman Street,* 17 Wend. 670; *Matter of Utica, Chenango, and Susquehanna Valley R. R. Co.,* 56 Barb. 456; *Bigelow* v. *Wisconsin*

*R. R. Co.*, 27 Wis. 478; *Simmons* v. *St. Paul and Chicago R. Co.*, 18 Minn. 184; *East Pennsylvania R. R. Co.* v. *Hottenstine*, 47 Pa. St. 28.)

The evidence in this case not showing that Owsley's farm was in any way peculiarly benefited by the construction of the road across it, it was not error in the court to omit to direct the jury to allow for benefits to the premises by reason of the taking of the land appropriated by defendant. (*Simmons* v. *St. Paul and Chicago R. R. Co.*, 18 Minn. 184; *Brown Bros. & Co.* v. *Forest*, 1 Wash., N. S., 201.)

Even if the court failed to instruct the jury as fully as it should have done upon this point, it was the duty of appellant to ask for further instructions, if not satisfied with that given, and it cannot now object, for the first time, in this court. (*Burns* v. *Sutherland*, 7 Pa. St. 103; *Express Co.* v. *Kountzee Bros.*, 8 Wall. 342.)

The appellee being a married man, as shown by the evidence, at the time of the appropriation by appellant, and the land taken being community property, any contract which may have been made or attempted by him in reference to the sale or transfer thereof, or of any interest therein, without the joinder and consent of his wife, was ineffectual and void, and conferred no rights therein whatever upon the railroad company. And if appellee could not alone, by contract, bind himself, or convey any interest in the land appropriated to defendant, it is evident he could not be bound, indirectly, by operation of law,—in other words, could not be estopped from claiming damages. There was, therefore, no error in the second instruction given to the jury at the request of plaintiff. (*Holyoke* v. *Jackson*, 2 West Coast Rep. 788.)

The objection to the first instruction given at the request of appellee is not tenable in this action. At most, the instruction is only open to verbal criticism. It was, in effect, only saying to the jury that they must be satisfied of the fact to be proved by a preponderance

of the evidence. If not strictly formal, that portion of the charge was certainly harmless, and not prejudicial to the appellant. (*Galpin* v. *Wilson*, 40 Iowa, 90; *Railway Company* v. *Whitton's Adm'r*, 13 Wall. 270, 291.)

And besides, the appellant was attempting in the court below to prove an equitable defense, to establish an equitable estoppel, and in such cases satisfactory evidence is required. (*Holt* v. *Brown & Co.*, 63 Iowa; S. C., 19 N. W. Rep. 235; *Brawdy* v. *Brawdy*, 7 Pa. St. 157, 159; *Juniata Building and Loan Association* v. *Hetzel*, 103 Pa. St. 507; *Coyle* v. *Davis*, 116 U. S. 108.)

In instructing the jury, in substance, that plaintiff would have a right to replace his ditches, subject to the right on part of defendant to tear them up, if necessary or convenient in order to operate its road, and at the same time refusing defendant's offer to show the cost of replacing the same, the court committed no error. (Mills on Eminent Domain, sec. 208, and cases cited.)

Mr. Chief Justice GREENE delivered the opinion of the court.

A proceeding was instituted under the Code by appellant, the railway company, for the appropriation and condemnation of a strip of land one hundred feet in width across the premises of appellee, upon which to construct and operate its railway. In the proceeding an award of damages was had, to which objections were filed pursuant to statute. Thereupon, as provided by statute, the cause was placed on the trial docket of the District Court, and issues were formed between the appellee as plaintiff, and appellant as defendant, by the filing of the ordinary pleadings in a civil action.

In the complaint was alleged the incorporation of the railway company, its authority to construct and maintain a railroad extending across certain described land owned by the plaintiff, the appropriation by the defendant of a strip thereof one hundred feet in width, and damages in the sum of four thousand dollars.

The answer admitted the appropriation; denied damages; and for affirmative defense, alleged that while engaged in locating its road across plaintiff's premises, and after it had selected, surveyed, and staked out a route for its railroad over the same, the plaintiff designated another line over his premises, and requested defendant to adopt the new line in lieu of that first selected, and agreed with defendant that if it would do so no damages would be claimed by reason of the location and construction of the railroad across the land. The answer further affirmatively alleged that defendant, relying on plaintiff's promise in that behalf, and induced thereby, changed its original location, and at considerable extent built its road as desired by plaintiff. All of this affirmative matter was denied by plaintiff in reply.

The issues thus made up were tried by a jury, who brought in a verdict for plaintiff in the sum of one thousand dollars damages. Judgment was rendered upon the verdict, and from the judgment this appeal is prosecuted.

In course of the trial it appeared in evidence for plaintiff that certain irrigating ditches, crossing the right of way, were interfered with and obstructed by the construction of the railroad. There was also evidence tending to show that at the time of commencement of the appropriation proceeding the construction was not complete. Thereupon the defendant offered to prove by testimony of its constructive engineer that according to the plans for construction the irrigating ditches were to be placed by the company in the same condition as before construction, and were to be maintained in that condition afterwards by the defendant at its own expense. Defendant also offered to show by the same witness what would be the expense of replacing the ditches interfered with, and of putting them again in the same condition as they were before the beginning of the construction, and that he was instructed by defendant during and as

part of the construction to replace the ditches at defendant's cost, and put them in the same condition as found. All these offers were overruled by the trial judge, and exceptions to his rulings were duly taken and allowed.

Whether these rulings were correct is the first question in the case. The decision of it seems to us to depend upon what interpretation—in the light of the varied modes and devices whereby, under our civilization, lands may be made available or raised in value, for agricultural and other purposes, and subject to the constitutional inhibition that no private property shall be taken for public use without just compensation—is to be given to the provisions of sections 2473 and 2474 of our Code, respecting damages to be assessed upon the appropriation of land for right of way. These sections, or as much of them as is necessary to consider, and with the expressions particularly in question marked by Italics, are as follows:—

"Sec. 2473.    Whenever any corporation *authorized to appropriate lands for the right of way* is unable to agree with the owner thereof as to the *compensation to be paid therefor,* either such corporation or the owner of such land may, by petition in which *the land sought to be appropriated* shall be described with reasonable certainty, apply to a justice of the peace in and for the county where said land lies, who shall thereupon summon three disinterested householders, . . . . and the householders so summoned, after being sworn faithfully and impartially to examine the ground which shall be pointed out to them by such corporation or person, or both, and described in the petition, *shall assess the damages which they believe the owner or owners will sustain over and above the additional value which the owners of adjoining land will derive from the construction of such road, canal, or other work.*

"Sec. 2474.    Upon the payment to such justice, for the use of the owners or to the owners of such lands, of

the damages assessed by said householders or a majority thereof, said corporation *shall have the right to appropriate the land in question to its own use for corporate purposes*, subject to the action of the district court in regard to damages as hereinafter provided; *provided*, that nothing herein contained shall be construed to prevent such corporation from going upon such lands for the purpose of preliminary surveys and exploration, and laying out the road or work."

It is not necessary for us to decide whether this language imports that the corporation is to acquire the fee or a mere easement. In either case the appropriation is conditioned for a particular use, and for the construction of a specific work. It is a common-sense view, and is manifestly contemplated by the legislature, that the owner whose land is taken will sustain a different kind and amount of damage from a work of one sort from a work of another sort,— from a railroad, for example, from that he would from a plank road, or an aqueduct, or a canal, or an electric wire; and by parity of reason, and for further illustration, from a railroad to be constructed on the natural surface of the ground, from that he would from one to be constructed in a cut, or on an embankment, or in a tunnel. Hence the statute prescribes that the damages to be assessed shall be those that the owner "will sustain . . . . from the construction of *such road, canal, or other work*," and not simply what he will sustain by being deprived of the land, or wholly or partly of the use of it. Thus the corporation is saved from having to pay more, and the land-owner from having to put up with less, than the "just compensation" enjoined by the constitution. The land-owner is not left at the mercy of the avarice of a corporation, nor the corporation at the mercy of the imagination of a jury; for the rule of our statute must have this corollary: that if the future exigency of the corporation should induce it to depart from the original construction so far as to subject the

land-owner to additional and substantial damages, then it must institute against him new proceedings for assessment or payment of them, or be liable to have such proceedings instituted against itself by him; and if it, without the supervention of such exigency, proceeds to take his property or diminish his rights, it is liable to injunction or a common-law action for damages.

We see no reason why any corporation seeking appropriation of a right of way should not be held entitled to the benefit of all the ingenuity and economy it may have at command in the planning and construction of its works, not only with reference to outlay for material and labor, but also with reference to compensatory damages to property owners along its right of way. If it sees fit to leave unappropriated so much of the land-owner's interest as consists in an easement for irrigating ditches across the right of way, there is no rule of law of which we are aware to prevent it doing so. It surely cannot be sound law that the corporation must take everything or nothing. Rather, it is bound to use its right of appropriation so as not to destroy or interfere with or debar any rights which may reasonably stand without prejudice to its own legitimate operations. The principle upon which it is allowed to become the agent of the commonwealth, to exercise the right of eminent domain, is not that it may as such agent do whatever it pleases, but rather that it may do whatever is reasonably necessary and convenient. Anything beyond this is not the taking of private property for public use, but the taking of it for private use. That same limitation which commonly attends the exercise of delegated power granted by a legislature in general terms, and which courts have often had occasion to recognize and apply in cases of municipal corporations, namely, that the exercise must be within the bounds of what, under all the circumstances, is fair and reasonable, we hold obtains in cases of the kind now before the court. This is the limit, on

WASH. III.—4

the one hand, of the liability of the land-owner to have his property taken, and on the other, of the liability of the appropriating corporation to him for compensation. The land-owner has his remedy for any corporate action in excess, but the remedy is not to be found, except incidentally, and by way of estoppel, in the condemnation proceeding. Upon the trial which we are reviewing, it would not have been permissible for the defendant to set up, over plaintiff's objection, its own wrong, and bring evidence to prove that a fair and reasonable exercise of the right of eminent domain would not damage plaintiff so much as the road as actually built or building was damaging or would damage him, but defendant would have been conclusively presumed, as against itself and in favor of plaintiff, to have done and be doing only that which was fair and reasonable in the premises. Yet the defendant was at liberty, if he could, to show that its structure was unfinished; that its plans called for such and such a construction; and that its works were being actually constructed in accordance therewith. The damages to be recovered were those damages which would be consequent upon a work of the nature and description of that which was in process of construction, or was to be or had been constructed, at the date of the initiation of the appropriation proceeding. But whatever had been done by way of construction, up to the date of trial, was admissible in evidence to show the real character of the work.

These are our views, and in so far as they are inconsistent with the rulings of the learned trial judge as respects the admissibility of the testimony offered, we think those rulings are erroneous.

Of his own motion, the district judge gave the jury two instructions, to the giving of each of which the appellant duly excepted. To the former of these, appellant objects that it had a tendency to mislead the jury as to how they should deal with general benefits affecting ap-

pellee's farm.   The language of the instruction does not
accurately express the law, and was probably suggested
by the peculiar and somewhat obscure phraseology of
our statute.   Doubtless our legislature intended to say
that damages should be assessed, without regard to any
enhanced value caused by the construction, and shared
in common by plaintiff and others, owners of land in
that vicinity adjoining the improvement.   But this jury
were told impliedly to take into account the general
benefit to plaintiff's land, by being expressly told to ex-
clude the general benefit to the farms of his neighbors.
This was error, but not to the plaintiff's prejudice.

The latter instruction is objected to, because, while it
allows to the plaintiff a qualified right, it allows to the
defendant a counter-right, which virtually makes the
plaintiff's right nugatory.   What has been said respect-
ing the rulings on evidence is applicable to this instruc-
tion.   If, according to the plan of construction of the
defendant's railroad,—actual, and not mere paper plan,
—plaintiff was to have or did have water passage from
one side of the road to the other for purposes of irriga-
tion, then he had a substantial right to such passage,
and could enforce it against the railroad company.   It
follows that no just estimate of his damages could be
arrived at, without taking that right into account as a
substantial and permanent right, qualifying the amount
he ought to recover.   According to the instruction, the
jury might include in their reckoning resulting damages
from defendant's lawless acts.   They might also pass
upon matters regarding which the defendant was not
allowed to produce evidence.   To give them to under-
stand that they might do these things was error.

Among the instructions given at request of plaintiff
were two upon which exceptions were saved.   Both ex-
ceptions were well taken.   In the first instruction, the
jury were told that in order to render the affirmative
defense available, the defendant must prove *by a prepon-*

*derance of evidence, and to your satisfaction,* that the plaintiff made in substance "certain representations,", etc.; "*and must further prove by a preponderance of evidence,* and to your satisfaction, that," etc.   From this the jury would naturally understand that the burden was on the defendant to prove his defense to a greater degree of certainty than that afforded by a mere preponderance of the evidence.   Indeed, they might even be led to think that this defense needed to be established beyond every reasonable doubt.

The second instruction must have been framed upon the theory that the railroad company was to take the right of way along the new line by contract, instead of by eminent domain.   But there is nothing in the record to support such a theory.   Pleadings and evidence both show that the railroad company never intended to obtain a right of way otherwise than by exercise of governmental power, and the plaintiff, by filing his complaint in the appropriation proceeding, estopped himself by record from asserting the contrary.   Nothing could be litigated in a proceeding of this kind but a bare question of damages for appropriating land.

Two of the instructions asked by the defendant were refused by the court, and exceptions to its ruling were taken and allowed.   We think both of the instructions were sound enunciations of law, and if preceded by evidence to support them, should have been given to the jury.

The judgment of the District Court must be reversed, new trial granted, and the cause remanded for further proceedings.

HOYT, J., and TURNER, J., concurred.